**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| JUAN F. HERNANDEZ, | : | |
| | : | Civil Action No. 21-19648 (SRC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**CHESLER**, District Judge:

Presently before the Court is Petitioner Juan F. Hernandez's motion to vacate his sentence brought pursuant to 28 U.S.C. § 2255. (ECF Nos. 1.) The Government filed a response to the motion (ECF No. 18), to which Petitioner replied. (ECF No. 21.) For the following reasons, Petitioner's motion is denied and Petitioner is denied a certificate of appealability.

## I. BACKGROUND

In its opinion affirming Petitioner's conviction and sentence, the Third Circuit summarized the background of this matter as follows:

> In October 2018, [Petitioner] was charged with one count of conspiring to transport individuals for purposes of prostitution,[] and one count of conspiracy to harbor aliens for financial gain.[ He] pleaded not guilty.
>
> As alleged in the indictment, [Petitioner] operated a chain of brothels throughout New Jersey, alongside his girlfriend, Elizabeth Rojas. The majority of women employed as prostitutes were undocumented. [Petitioner] also hired undocumented individuals to work as house-operators in charge of opening and closing the brothels, taking payment from customers, and running errands for

the prostitutes, and others to serve as lookouts to warn of police activity.

During the course of a five-day trial, the Government presented the testimony of three of [Petitioner]'s brothel workers.

One of those workers, Jose Hernandez-Moreno, described how he came to the United States illegally and started working for [Petitioner].   Moreno informed [Petitioner] that he was undocumented, but [Petitioner] never asked for "working papers" or processed tax forms for Moreno's employment[.]   Moreno also testified that [Petitioner] rented eight houses as brothels under different names; made employment decisions, including pay; found women to work as prostitutes; transported workers to and from bus and train stations; and made rounds and daily calls to ensure operations were running smoothly, and to collect cash payments from customers.

Two former prostitutes also testified and corroborated Moreno's account of brothel operations.   Cristina Suerro Guerrero testified that she began working for [Petitioner] sometime after arriving in the United States illegally from the Dominican Republic. While working for [Petitioner], Guerrero lived in Pennsylvania and New York, and traveled to the brothels in New Jersey.   On one occasion, [Petitioner] transported Guerrero from a train station in Trenton to one of the brothels.   Guerrero also explained that [Petitioner] knew she lived out-of-state, and that he never asked for her "working papers" or identification, never provided her with tax forms, and paid her in cash.

Nashielly Salinas Pacheco testified that after being trafficked across the border from Mexico, she worked for [Petitioner] while living in Queens, New York.   On at least one occasion, she traveled by bus from New York to New Jersey, and one of [Petitioner]'s workers picked her up from the station and drove her to a brothel.   Again, [Petitioner] never asked to see Pacheco's working papers, and never gave her any tax forms. Pacheco also testified that when [Petitioner] or Roja scheduled her shifts, it was understood that she would not leave her assigned brothel without permission.   She explained that this was because "it was a brothel and there are neighbors and what we are doing is not legal," and she knew if she got caught "[law enforcement] would put me in jail for prostitution and later deport me."[]

2

The Government also called two law enforcement witnesses who testified about arrests made and evidence seized during the execution of search warrants at the brothels.  As relevant, Special Agent Christopher Iatoro from Homeland Security testified that law enforcement encountered approximately 30 people on the day the brothels were searched, the majority of whom were illegal aliens.

The jury convicted [Petitioner] on both counts.  At sentencing, the District Court rejected [Petitioner]'s objection to a six-level specific offense characteristic enhancement . . . based on its finding that the offense involved harboring between 25 to 99 illegal aliens.[]  The District Court sentenced [Petitioner] to concurrent 78-month terms of imprisonment on each count.

(Docket No. 15-80 at ECF No. 107-2.)


## II.  DISCUSSION

### A.  Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.   Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert.*

3

*denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

**B.   Analysis**

**1.   An evidentiary hearing is not required to resolve Petitioner's motion**

A district court need not hold an evidentiary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).   "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required."   *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546.   Because Petitioner's claims are clearly without merit for the reasons set forth below, no evidentiary hearing is required in this matter.

**2. Petitioner's ineffective assistance of counsel claims**

In his motion to vacate sentence Petitioner presents several claims asserting ineffective assistance of counsel.   The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).   To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.   This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the

4

'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "depriv[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

5

*Judge*, 119 F. Supp. 3d at 280-81.

In the majority of his claims, Petitioner asserts that counsel failed to investigate his case and potential witnesses who could have been called at trial.   As courts in this District have explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691.   "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness."   *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).
>
> Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice.   In order to do so,
>
>> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced.   The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.
>
> *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate

> resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Here, Petitioner specifically faults counsel for "failing" to investigate witnesses to call in his defense.   As the decision as to which witnesses should be called at trial rests firmly in counsel's hands, where a petitioner challenges his counsel's decision as to which witnesses to call, courts "are 'required not simply to give [the] attorney[] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as he did.'"   *Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014).   "*Strickland* requires that a defendant 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'   466 U.S. at 689 (internal quotation marks omitted).   If the Government 'can show that counsel actually pursued an *informed* strategy (one decided upon after a thorough investigation of the relevant law and facts),' the effectiveness of counsel's assistance is 'virtually unchallengable.' *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005)."   *United States v. Graves*, 613 F. App'x 157, 159 (3d Cir. 2015).   Likewise, in order to show that he was prejudiced by counsel's failure to call any particular witness, a petitioner must present a sworn statement setting forth that witness's proposed testimony as the "failure to include a sworn statement regarding the nature of [a witness's] proposed testimony is fatal to his making a *prima facie* showing of prejudice."   *Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014); *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001).

Petitioner first contends that counsel failed to secure and call an expert witness who could have "educate[d] the jury" about the potential for bias in accomplice and cooperating witness testimony.   (ECF No. 1 at 16.)   Petitioner, however, has not identified any proposed expert who would have been available for trial, nor does he provide a sworn statement of any proposed expert. As such, he cannot show that he was prejudiced by this alleged failing, and this claim is clearly without merit.   *Duncan*, 256 F.3d at 201-02.

Petitioner next contends that counsel proved ineffective in failing to call a number of proposed character witnesses to establish that he was "hard working" and "law abiding" and to suggest he did not have time to run a large scale prostitution ring.   Specifically, Petitioner argues counsel should have called Ogilvie Hernandez, who runs a company called Mexico Lindo for which Petitioner apparently worked between 2000 and 2014; Adrian Castilllo, for whom Petitioner worked during the period when the prostitution ring was operating; Sosue Chanez, who ran a construction company for which Petitioner also worked; Ivan Sanchez, who operated a taxi business for whom Petitioner at least occasionally drove; Petitioner's probation officer Cruz, and Petitioner's co-conspirator Elizabeth Rojas.   As with the expert witness claim, in his original motion to vacate sentence, Petitioner failed to provide a sworn statement setting forth proposed testimony for any of these witnesses.   In his reply brief, however, Petitioner presents sworn statements from two of the witnesses – Adrian Castillo and Ogilvie Hernandez.   As Petitioner has failed to provide a sworn statement of proposed testimony for Chanez, Sanchez, Cruz, or Rojas,[1]

---

[1]  As to Rojas, the Court also notes that counsel did not seek to interview her because, as Petitioner's co-defendant, Rojas was represented by counsel and was not available for interview. (ECF Nos. 18-1; 18-2.)   The Government further points out that Rojas was not reasonably available for trial in any event as she had already pled guilty, served a prison sentence, and been deported prior to Petitioner's trial, and it thus appears that even had counsel been able to speak

he cannot show that he was prejudiced by counsel's alleged failure to call those witnesses. *Duncan*, 256 F.3d at 201-02.

Petitioner's claims relating to Castillo and Hernandez fare no better.   Although Petitioner asserts that counsel never sought out these witnesses, both of his trial counsel have provided certifications indicating that they did, indeed, send investigators to find these proposed witnesses, but could only locate two – the owner of a taxi company, presumably Sanchez, and the owner of a landscaping company, who may be Chanez or Hernandez– but could not locate the others.   (*See* ECF Nos. 18-1; 18-2.)   In any event, counsel chose not to call these or any other witnesses as to Petitioner's employment history for a very basic reason – the proposed testimony Petitioner wished to have presented would have done no more than show that he was employed and may have paid taxes during the period between 2000 and 2014, which was of at best limited value in the face of the substantial evidence of Petitioner's guilt presented at trial.   (*Id.*)   Nothing these witnesses would have presented in counsel's mind would have warranted the risk of opening the door for the Government to counter this evidence of "good" character with evidence directly assailing Petitioner's character which would otherwise not have been admissible.

Having reviewed the sworn statements Petitioner has provided, this was undoubtedly a logical strategic choice.   Even for the only two witnesses Petitioner himself found willing to provide sworn statements, those sworn statements amount to the two individuals providing no more testimony that Petitioner worked for Ogilvie for a number of years and was "a good

---

with her there is nothing in the record to suggest she could have been called as a witness at trial even had she been willing to testify on Petitioner's behalf.   All of these facts further support the conclusion that counsel were not ineffective in "failing" to call her as a witness at trial, although the Court need not rely on them as Petitioner's failure to present any sworn affidavit from Rojas prevents him from showing prejudice.

employee" and "very honest person" and a statement that, for some unspecified period of time, Petitioner also worked for Imperial Electro Plating.  (ECF No. 21 at 35-36.)  Neither has an exculpatory testimony to provide, neither can directly contradict the strong evidence of Petitioner's guilt presented at trial, and neither can provide testimony which would do anything other than open the door to evidence of Petitioner's bad character.   In light of the extremely limited value of the testimony of these two proposed witnesses, and counsel's logical strategic basis for choosing not to pursue good character testimony from Petitioner's previous employers, Petitioner has utterly failed to show ineffective assistance of counsel as to the alleged failure to call any of these witnesses.

In addition to these witnesses, Petitioner in his reply brief raises an entirely new claim – that his counsel were ineffective in failing to investigate and call Wilmer Chavez at trial.   Chavez, an individual who implicated several people in the prostitution ring and later recanted, Petitioner contends, was the author of one of several letters addressed to a "Jose Choco," who the Government contended was Petitioner, seized from Petitioner's address but addressed to one of the prostitution ring charges. Although this letter was read at trial, it was not identified as coming from Chavez, and the letter itself was presented merely to connect Petitioner, from whose possessions the letters were taken, to the prostitution ring and the name "Choco."   The letter itself amounts to the author, writing from prison, requesting that Choco talk to his attorney and ask for help in getting parole, after which the author would be able to help Choco with his work.   The text of the letter itself was not directly inculpatory – it does not identify the nature  of Choco's business, and was certainly not testimonial in nature.   Petitioner contends in his reply brief, however, that counsel's failure to interview and call Chavez as a witness amounts to ineffective

assistance, and that counsel should have objected to the letter on the grounds that it amounted to a violation of his right to confront the witnesses against him.

Initially, the Court notes that this claim was raised for the first time in Petitioner's reply brief.  "It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted" and that new arguments "cannot be raised for the fist time in reply briefs."  *See Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp 447, 458 (D.N.J. 1998); *Jurista v. Amerinox Procesing Inc.*, 492 B.R. 707, 778-80 (D.N.J. 2013); *see also Judge*, 119 F. Supp. 3d at 284.  This is because basic fairness "requires that an opposing party have fair notice of his adversary's claims, as well as an opportunity to address those claims.  *Judge*, 119 F. Supp. 3d at 284.  Thus, when a habeas petitioner raises a new claim in a reply brief in a § 2255 matter, a reviewing court may decline to consider that claim for this reason alone.  *Id.*  Because Petitioner's claim related to the letter was first raised in reply, and the Government was not provided an opportunity to respond to is, this Court would be well within its authority to reject this claim for that reason alone.

Putting aside this issue, however, it is clear that Petitioner's claims related to Chavez and the letter are without merit.  First, to the extent Petitioner contends that counsel should have investigated and called Chavez as a witness at trial, he has utterly failed to provide any sworn statement setting forth any testimony Chavez would have provided at trial.  Instead, Petitioner provides only an admission that Chavez implicated people including himself regarding the prostitution ring in 2014, and later recanted, submitting a letter which states that statements made against Petitioner and his co-defendant were allegedly the result of "pressure" from a county prosecutor and made to secure for himself a better deal at sentencing.  (*See* ECF No. 21 at 40.)

11

This letter presents no exculpatory testimony Chavez could or would have provided.   What it does confirm, however, is that if Chavez had been called as a witness in Petitioner's favor, there was a statement, made by Chavez to prosecutors, with which the Government could have directly confronted him, a statement that certainly would have done Petitioner no favors.   As Petitioner's failure to provide a sworn statement detailing the testimony Chavez would have provided at trial is fatal to his ability to show *Strickland* prejudice related to the failure to call him as a witness, and as the evidence in the record in any event suggests that calling Chavez would have provided little more than an avenue for the Government to confront Chavez with inculpatory statements he had made by Petitioner, Petitioner's claim that counsel should have called Chavez at trial is clearly without merit as Petitioner cannot show prejudice.   *Duncan*, 256 F.3d at 201-02.

Petitioner's confrontation claim related to the Chavez letter fares no better.   The Confrontation Clause generally protects criminal defendants from the admission of testimonial hearsay statements against them where the maker of the statement was not made available to the defendant for cross-examination in a judicial proceeding.   *See Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).   The Clause only prohibits the admission of testimonial hearsay statements which are presented for the truth of the matter asserted within the statement and do not fit within established and recognized exceptions to the hearsay rule.   *Id.* at 54.   Where a statement is nontestimonial, the Clause simply does not apply.   *Id.*; *see also Davis v. Washington*, 547 U.S. 813, 822 (2006).   Although the Supreme Court has not adopted a bright line division between testimonial and non-testimonial statements, it has presented some guidance on the issue – statements will only be testimonial when the nature of the statement renders the speaker a witness within the meaning of the Clause.   *Davis*, 547 U.S. at 822.   Thus, statements generated during

police investigations through questioning with an eye towards prosecution will generally qualify as prosecutions, whereas statements not made in reference to or for the future purpose of litigation or prosecution generally will not qualify. *Id.* Ultimately, courts determining whether a statement look to the objective character of the statement in question and determine whether the statement is "testimonial" – i.e., akin to testimony or a witness statement – in the colloquial, generally understood sense. *Id.*

The letter with which Petitioner takes issue here is clearly non-testimonial. The letter was written by a private individual, to an apparent friend or comrade, for the purposes of asking for help in exchange for future business cooperation. The statement was not made with or by prosecutorial or police action, it is not of the character of a statement by a witness in a legal proceeding, and instead appears to be a private exchange between associates never meant to be seen by outside eyes or to be used in any sort of legal proceeding. The letter is thus clearly not testimonial, and any Confrontation Clause challenge to its admission would have been utterly without merit. *Id.* As the failure to raise a meritless motion is not ineffective assistance of counsel, Petitioner's Confrontation Clause related ineffective assistance claim is thus meritless. *See . See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011).

Petitioner next argues that counsel was ineffective in failing to investigate a phone recording of a conversation between Petitioner and a Government witness which was ultimately played at trial, and which the Government witness authenticated as between himself and Petitioner during his testimony. Petitioner contends that counsel should have sought a voice analysis to "prove" that Petitioner was or was not the voice on the other end of the line. Once again,

Petitioner has utterly failed to provide any evidence or proposed expert testimony to suggest that defense counsel could have proven that his was not the other voice involved in the call, and Petitioner thus cannot show prejudice from the failure to secure a voice analysis.   More to the point, both of Petitioner's counsel assert that they chose not to seek such an analysis as the outcome would likely be more harm than good to Petitioner – if a formal report found that Petitioner *was* the voice on the recording as the Government's witness testified, it would have simply added ammunition to the Government's case and further strengthened an already overwhelming case against Petitioner.   Counsel's decision not to seek an expert evaluation of the call was thus sound trial strategy, and was not deficient. As Petitioner has in any event not shown any basis to challenge the Government witness's authentication of the recording and not made a comprehensive showing that further investigation would have led to any evidence that he was not the recorded voice, this claim of ineffective assistance of counsel is utterly without merit and provides no basis for habeas relief.

Petitioner also argues that counsel's alleged failures to investigate his case were the result of counsel's belief that he was guilty of the crimes charged.   Specifically, Petitioner alleges that counsel told his family members that they should try to convince him to plead guilty or Petitioner may ultimately receive the death penalty.   In his reply brief, Petitioner provides notarized letters from family members who assert that, during a conversation with one of his attorneys conducted through a translator, counsel told them that if Petitioner did not plead guilty he could be sentenced to death.   In their certifications, counsel state that Petitioner and his family members are, to some extent, mistaken, and that what counsel actually told them was that it would be better if Petitioner pled guilty because otherwise, in addition to the sentencing exposure on the underlying charges,

14

Petitioner might be subjected to a superseding indictment with a multiple murders related charge which would carry death penalty eligibility.  This Court, however, need not hold a hearing to determine whose recollection is more accurate.  The death penalty issue is ultimately a red herring.  Clearly, Petitioner had no intention of pleading guilty even in the face of any threatened penalty, and he was thus not prejudiced by counsel's advice to plead guilty as it is clear that any less severe advice would not have changed his mind and led to a guilty plea if the looming threat of a death penalty did not sway him.  *See, e.g., Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (prejudice as to plea related advice requires showing that outcome would have differed with different advice).  Indeed, he does not now allege that the outcome of any plea deal would have been different with better advice.

Instead, Petitioner seeks to use the death penalty advice issue as a means to poison the well as to his failure to investigate claims, asserting that counsel poorly investigated his case because they believed him guilty.  The Court notes, however, that there is no requirement that defense counsel believe in his client's innocence, only that counsel provide competent assistnace during trial proceedings.  Regardless of the alleged motive for counsel's alleged failing, the ultimate test remains the same – to show that counsel proved ineffective, he must actually show that counsel failed to investigate his case and that "better" investigation would have turned up evidence which would have potentially changed the outcome of his trial.  *Brown*, 2016 WL 1732377, at *4-5. Petitioner has utterly failed to make any such showing. He has not presented any evidence which might have been discovered which would have had an effect upon the outcome of his trial, and he has in any event not shown that counsel did not investigate his case.  To the contrary, the trial record, including counsel's arguments to this court, pretrial motions, and thorough cross-

15

examination of witnesses, clearly indicates that both counsel were very familiar with the facts of Petitioner's case, had investigated Petitioner's charges, and ably defended him in the face of overwhelming evidence of his guilt.   Petitioner has thus failed to show that counsel were ineffective in investigating his case, and has thus not shown ineffective assistance of counsel.

In his final claim, Petitioner asserts that even if his claims fail individually, counsel's cumulative failings warrant relief.   Although errors "that individually do not warrant habeas relief may do so when combined,"

> a cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.   Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (internal quotations and citations omitted), *cert. denied*, 552 U.S. 1108 (2008).   Petitioner's claims fare no better cumulatively than they do individually.   Even considered in the aggregate, Petitioner has utterly failed to show that he was prejudiced by counsel's alleged errors, and thus cannot show ineffective assistance of counsel. Petitioner's cumulative claim is thus also without merit.   As all of Petitioner's claims are clearly without merit, his motion to vacate sentence is denied.


### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a

constitutional right."   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   As Petitioner's claims are all clearly without merit, Petitioner is denied a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion to vacate sentence (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability.   An appropriate order follows.

_____s/ Stanley R. Chesler_____
Hon. Stanley R. Chesler,
United States District Judge

17